# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

CASE NO: _____

ALLSTATE INSURANCE COMPANY,

     Plaintiff,

  v.

THOMAS J. CANNON III and FLAG
WHARF INC.,

     Defendants.

**JURY DEMAND**

## VERIFIED COMPLAINT FOR REPLEVIN, INJUNCTIVE AND OTHER RELIEF

Plaintiff Allstate Insurance Company ("Allstate") alleges as follows for its Verified Complaint for Replevin, Injunctive and Other Relief against Defendants Thomas J. Cannon III ("Cannon") and Flag Wharf Inc. ("FWI"):

## INTRODUCTION

1.    This lawsuit is the result of Defendants Cannon and FWI illegally taking and retaining Allstate confidential information and property.

2.    Specifically, Cannon and FWI own and operate a commercial property at 13873 Wellington Terrace in Wellington, Florida ("Wellington Terrace").  Cannon is the leasing agent and landlord for Wellington Terrace, and he controls the property known as Wellington Terrace.

3.    A former Exclusive Allstate Agent, Michael Reynolds ("Reynolds"), leased office space, Office Number B-13, at Wellington Terrace until on or about September 1, 2020. Reynolds left Allstate property at Wellington Terrace when he vacated Wellington Terrace.

4.        Based upon information and belief, the Allstate property Reynolds left at Wellington Terrace includes some of Allstate's most sensitive and confidential information, such as Allstate customer names and addresses, policy and premium information, and other confidential customer information.

5.        Allstate has a duty and obligation to protect this information from unauthorized use, and/or disclosure to individuals and entities who are not authorized to possess, receive, view or use this information.

6.        Not surprisingly then, Allstate immediately contacted Cannon upon learning about Reynolds vacating Wellington Terrace, and demanded the return of the Allstate confidential information Reynolds left at Wellington Terrace.

7.        In response, Cannon admitted to taking possession of the Allstate confidential information left by Reynolds at Wellington Terrace.  He has admitted that he had no right to keep or possess Allstate confidential information.  Nevertheless, Cannon refused to return the Allstate confidential information to Allstate, and continues to refuse to return the Allstate confidential information in his possession, custody and/or control to Allstate.

8.        Consequently, Allstate now brings suit against Cannon and FWI for the return of Allstate confidential information currently in Cannon's and/or FWI's possession, custody or control. In doing so, Allstate respectfully requests that the Court enter an order a) compelling Cannon to immediately return all Allstate confidential information in his possession, custody or control to Allstate, b) enjoining Cannon from possessing Allstate confidential information, and c) awarding Allstate the damages and costs (including attorneys' fees) Allstate incurs in recovering its confidential information from Cannon.

**PARTIES, JURISDICTION AND VENUE**

9.      Allstate Insurance Company ("Allstate") is an Illinois corporation with its principal place of business in Northbrook, Illinois.

10.      Thomas J. Cannon III ("Cannon") is a Florida resident and is located in West Palm Beach, Florida.  Cannon also conducts business in Florida, including business at Wellington Terrace.

11.      Upon information and belief, Flag Wharf Inc. ("FWI") is a New York Corporation with its principal place of business at 888 Seventh Avenue in New York, New York. FWI owns and, through Cannon, operates Wellington Terrace.

12.      This Court has subject matter jurisdiction over this dispute, pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331, because Allstate's claims against Cannon and FWI under the Federal Defend Trade Secrets Act, 18 U.S.C. § § 1836, et seq., raise a federal question. Allstate's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the federal question that they form part of the same case or controversy.  Alternatively, this Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), because this action and controversy is between citizens of different states and exceeds the value of $75,000, exclusive of interest and costs.

13.       This Court has personal jurisdiction over Cannon because, based upon information and belief, Cannon is a citizen of Florida and conducts business in Florida.  This Court has personal jurisdiction over FWI because FWI conducts business and owns property, including Wellington Terrace, in Florida.

14.      Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b), because Cannon and FWI reside and/or conduct

3

business in this District, the property Allstate seeks to recover is located in this District, and a substantial part of the events giving rise to Allstate's claims occurred in this District.

## BACKGROUND

15.     Allstate is one of the nation's leading providers of, among other things, insurance and financial products and services ("products") to third party individuals and businesses.  In addition to providing these products directly, Allstate appoints independent exclusive agents ("Exclusive Agents"), through its Exclusive Agency Program, to sell Allstate products.

16.     On January 1, 2015, an individual named Michael Reynolds ("Reynolds") and Allstate entered into the "Allstate R3001S Exclusive Agency Agreement" ("Agreement").  (A copy of the Agreement is attached as Exhibit A).

17.     Pursuant to Section I(A) of the Agreement, Reynolds was authorized to "receive and accept, subject to certain restrictions under [the Agreement], applications for insurance covering such classes of risks located in the State of Florida".  (Agreement, § I(A)).  In other words, Reynolds was an Allstate Exclusive Agent and authorized to sell Allstate products in the State of Florida as of January 1, 2015.  (*Id*.).

18.     As an Allstate Exclusive Agent, Reynolds was provided Allstate confidential information, including, but not limited to: Allstate business plans; information regarding the names, addresses, and ages of policyholders; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and policyholder information subject to privacy laws; claim information; and certain information and materials identified by Allstate as confidential and/or trade secret information.  (Agreement, § IV(D)).

19.     Allstate customers entrust Allstate and its Exclusive Agents to safeguard and protect information identified in paragraph 18 from unauthorized use or disclosure.  Allstate

4

keeps this information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business.  The information is not available to the general public and is closely guarded by Allstate.

20.     Allstate protects the information described in paragraph 18 by, among other things: limiting the disclosure and use of this information to only the Exclusive Agent and the Exclusive Agent's employees who need this information to sell Allstate products; educating the Exclusive Agent and the Exclusive Agent's employees about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and requiring that both the Exclusive Agent and the Exclusive Agent's employees execute written agreements that protect against the misuse and improper disclosure of Allstate confidential information.

21.     Pursuant to Sections IV(D, E) and XVIII(B) of the Agreement, Reynolds acknowledged that the confidential information he was provided and had access to as an Allstate Exclusive Agent would at all times remain Allstate property. (Agreement, §§ IV(D, E), XVIII(B).)

22.     Reynolds also agreed to return to Allstate all Allstate confidential information and property upon termination of the Agreement. (*Id.*).

23.     According to its website, FWI is a "diversified real estate investment and management company headquartered in New York, NY with additional offices in Boston, MA and Clearwater, FL." https://www.flagwharfinc.com.

24.     FWI "seeks acquisitions in Retail, Multi-Family, Office and Industrial buildings in the Northeastern and Southeastern United States" and "offers property management services for our existing properties, as well as third-party owners." (*Id.*)

25.     One of FWI's properties is Wellington Terrace, which FWI advertises as:

Wellington Marketplace is located in Wellington, Florida, a suburb of West Palm Beach in Palm Beach County. The property totals 231,600 square feet and has four outparcels and excellent ingress and egress. The property is located in the heart of Wellington proper, one of the most affluent residential communities in all of South Florida with an average household income of $100,000. Built in 1989 as the neighborhoods first shopping center, the property has cemented itself as the nucleus of the city as the land around it has evolved into a densely populated residential suburb with extremely limited commercial development. (https://www.flagwharfinc.com/our-properties/wellington-marketplace.html)

26.     Cannon is the President of FWI, and operates and oversees Wellington Terrace.

27.     Based upon information and belief, Reynolds entered into a lease agreement for office space with landlord Cannon and FWI at Wellington Terrace on or about January 1, 2015.

28.     Allstate was and is not a party to the lease agreement between Reynolds, on the one hand, and Cannon and FWI on the other hand.  As such, there is no contractual privity, or other legal obligations, between either Cannon and Allstate or FWI and Allstate.

### Cannon and FWI Take Possession of
### Allstate Confidential Information and Refuse to Return It

29.     Reynolds kept Allstate files containing Allstate property and confidential information at Wellington Terrace.  He also collected payments, such as remittance checks, from Allstate customers at Wellington Terrace.

30.     On or about September 1, 2020, Reynolds abandoned Wellington Terrace. Reynolds did not tell Allstate that he was abandoning Wellington Terrace and, based upon information and belief, also did not tell Cannon or FWI that he was abandoning Wellington Terrace.

66631150v.1

31.     Reynolds left approximately 20 boxes of confidential Allstate customer files at Wellington Terrace when he abandoned Wellington Terrace.  Based upon information and belief, the customer files left at Wellington Terrace contain some of Allstate's most sensitive and confidential information, and are considered "confidential information" under the EA Agreement.

32.     Upon learning that Reynolds left Allstate confidential information at Wellington Terrace, Allstate immediately contacted Cannon and asked for the return of the confidential information.

33.     In response, Cannon acknowledged that Reynolds left Allstate confidential information at Wellington Terrace.  Cannon also admitted to taking possession of, and control over, the Allstate confidential information.  (A copy of an October 13, 2020 letter from Cannon to Allstate acknowledging Cannon taking possession of the Allstate confidential information is attached as Exhibit B).

34.     Allstate has had conversations with Cannon since October 13, 2020 about the Allstate confidential information in his possession.

35.     During these conversations, Cannon  acknowledged that he has no right to possess Allstate confidential information.  Nevertheless, and because he is upset that Reynolds abandoned Wellington Terrace, Cannon refuses to return Allstate confidential information.

36.     For example, Allstate discussed the Allstate the return of Allstate confidential information with Cannon on November 2, 2020.

37.     On November 2, 2020, Allstate again demanded that Cannon and FWI return the Allstate confidential information in Cannon's possession to Allstate.  (A copy of Allstate's November 2, 2020 email is attached as Exhibit C).

38.     Cannon is also a lawyer.  Accordingly, Allstate reminded Cannon on November 2, 2020 that:

> Since you are a lawyer, I respectfully direct your attention to Rule 4-3.1 of the Florida Rules of Professional Conduct.  Rule 4-3.1 states that a "lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."  As you know, you have no legal, factual, or justifiable basis to withhold or possess the customer files." (*Id.*)

39.     In response, Cannon flippantly wrote "disagree." (*Id.*).

40.     Following the above email exchange and until the filing of this Complaint, Allstate repeatedly requested that Cannon and FWI return the Allstate confidential information; however, all requests have been to no avail, necessitating the commencement of this action.

41.     Thus and despite numerous requests from Allstate, Cannon and FWI have refused, and continue to refuse, to return the Allstate confidential information in their possession, custody and/or control to Allstate.

42.     Cannon has no right to retain or possess the Allstate confidential information in his possession, custody or control.

43.     Similarly, Cannon has no claim to the Allstate confidential information in his possession, custody or control.

44.     FWI has no right to retain or possess the Allstate confidential information in its possession, custody or control.

45.     Similarly, FWI has no claim to the Allstate confidential information in its possession, custody or control.

66631150v.1

## COUNT I
### (Replevin)

46.     Allstate repeats and realleges the allegations contained in paragraphs 1 through 45, as if fully incorporated herein.

47.     As explicitly stated in the Agreement, Allstate is entitled to possession of all Allstate confidential information that was provided to Reynolds as an Exclusive Agent, which Cannon and FWI subsequently came to possess.  In other words, Allstate has a superior right to Cannon and FWI with respect to Allstate confidential information.

48.     Cannon and FWI have admitted to Allstate, on numerous occasions, that Cannon is in possession of Allstate confidential information and has no right to possess Allstate confidential information.

49.     Nevertheless, Cannon and FWI will not return the confidential information to Allstate.

50.     Allstate has made several demands for Cannon and FWI to return Allstate confidential information to Allstate.  Yet Cannon and FWI have repeatedly refused to do so.

51.     Cannon has no right to possess Allstate confidential information.

52.     FWI has no right to possess Allstate confidential information.

53.     The Allstate confidential information in Cannon's and/or FWI's possession has not been taken for any tax, assessment or fine.  Nor has the confidential information been seized under any execution or attachment against property or held under any lawful purpose.  The information and property is also not exempt from seizure.

54.     Allstate needs its confidential information in order to maintain the business relationships that it has developed over many years, protect the relationships it has developed

66631150v.1

with its customers over many years, protect its customers' privacy, and maintain the confidentiality of its confidential information.

55.     The Allstate confidential information and property is valued at over $75,000.

56.     Based upon information and belief, the Allstate confidential information is located at Wellington Terrace.

57.     Pursuant to Florida Code of Civil Practice and Procedure 78.01 and Federal Rule of Civil Procedure 64, Allstate is lawfully entitled to the confidential information being wrongfully detained by Cannon and FWI.

58.     Consequently, Allstate respectfully requests that an order of Replevin be issued against Cannon and FWI that requires Cannon and FWI to return to Allstate within five (5) days the Allstate confidential information in their possession, custody or control.

59.     In addition, Allstate is entitled to recover the attorneys' fees and expenses it incurs as a result of Cannon's refusal to return Allstate confidential information.

**COUNT II**
**(Violation of the Uniform Florida Trade Secrets Act)**

60.     Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 59 of the Verified Complaint, as if fully set forth herein.

61.     During the course of Reynold's relationship with Allstate, Reynolds was provided access to substantial amounts of Allstate confidential information that allowed him to solicit business for Allstate and to service Allstate customers.  This includes the information identified in paragraph 18 above.

62.     For instance, Reynolds had access to:  Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location

10

of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; and claim information.

63.     Cannon and FWI are now in possession of the Allstate confidential information described in paragraphs 18 and 61.

64.     This information is considered a trade secret under Florida law because Allstate derives independent economic value from this information, the information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

65.     The economic value of the Allstate confidential information in Cannon's and/or FWI's possession is over $75,000.00.

66.     Cannon and FWI acknowledged that they are in possession of Allstate confidential information and have no right to possess Allstate confidential information.

67.     Consequently, Cannon and FWI have misappropriated Allstate trade secrets in violation of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*

68.     Cannon's and FWI's misappropriation has been willful and malicious in light of their refusal to return Allstate confidential, proprietary and/or trade secret information.

69.     Cannon's and FWI's actions have also damaged Allstate's goodwill, reputation, and legitimate business interests.

70.     Because Cannon's and FWI's misappropriation is continuing and poses significant irreparable harm, Allstate requests that this Court grant injunctive relief against Cannon and FWI that:

    a.     Orders Cannon and FWI to immediately return any and all confidential and proprietary Allstate information within their possession, custody or control to

11

Allstate; and

b.      Restrains Cannon and FWI from possessing or retaining any Allstate confidential information and/or from disclosing Allstate confidential information to anyone not authorized to receive the information.

71.     Allstate is also entitled, and seeks, to recover its reasonable attorneys' fees from Cannon pursuant to the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.005, as a result of his willful and malicious misappropriation of Allstate's trade secrets.

## COUNT III
### (Violation of Federal Defend Trade Secrets Act)

72.     Allstate repeats and realleges Paragraphs 1 through 71 of the Complaint, as if fully set forth herein.

73.     Allstate confidential information, including the confidential information identified in Paragraphs 18 and 61 is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

74.     Allstate confidential information is considered a "trade secret" under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq. ("DTSA"), because the information is not generally known outside of Allstate's business, the information is not generally known by employees and others involved in Allstate's business, Allstate has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allstate and its competitors, Allstate invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Allstate continuously uses the information in its business.

75.     Cannon and FWI are not authorized to retain and/or possess Allstate confidential information.

66631150v.1

76.     Unfortunately, Cannon and FWI refuse to return the Allstate confidential information in their possession, custody or control and, instead, retain and intend to continue retaining Allstate confidential information.

77.     Cannon's and FWI's continued possession of Allstate confidential information violates the DTSA.

78.     Naturally then, Allstate requests an order enjoining Cannon and FWI from possessing any Allstate confidential information and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

79.     Allstate also requests an order requiring Cannon and FWI to return any and all Allstate confidential information still in their possession, custody and/or control to Allstate, and award compensatory damages arising from Cannon's and FWI's illegal retention and possession of Allstate confidential information.

80.     Finally, Cannon's and FWI's misappropriation of Allstate confidential information has been willful and malicious, and Allstate has incurred significant damages as a result of Cannon's and FWI's misappropriation of Allstate confidential information.

81.     Cannon's  and FWI's actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

82.     Allstate is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

WHEREFORE, Allstate Insurance Company respectfully requests that the Court:

(a)     issue an Order of Replevin against Thomas J. Cannon III and Flag Wharf Inc. that requires Cannon and FWI to return all Allstate confidential information and property to Allstate;

(b)     Grant injunctive relief against Cannon and FWI that:

1.       Orders Cannon and FWI to immediately return any and all confidential and proprietary Allstate information within their possession, custody or control to Allstate; and

2.       Restrains Cannon and FWI from using any Allstate confidential information for their own benefit and/or from disclosing Allstate confidential information to anyone not authorized to receive the information.

(c)      Enter judgment against Cannon and FWI for compensatory damages in an amount to be determined at trial

(d)      Enter judgment against Cannon and FWI for punitive damages in an amount to be determined at trial;

(e)      Award Allstate the costs and expenses and interest, including reasonable attorneys' fees, it incurs as a result of Cannon and FWI violating the Florida Uniform Trade Secrets Act and the Federal Defend Trade Secrets Act; and

(f)      award Allstate such other further relief as this Court deems just and appropriate.

DATED: January 19, 2021                      Respectfully submitted,

/s/ *James B. Sowka*
James B. Sowka, FSB No. 0869821
J. Scott Humphrey (to be admitted *pro hac vice*)
Besma Fakhri (to be admitted *pro hac vice*)
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
Tel:  (312) 460-5000
Fax: (312) 460-7000
jsowka@seyfarth.com
shumphrey@seyfarth.com
bfakhri@seyfarth.com

**Counsel for Plaintiff Allstate Insurance Company**

14

66631150v.1

**<u>VERIFICATION</u>**

Pursuant to 28 U.S.C. § 1746, I, Paul Sylvester, on behalf of Plaintiff Allstate Insurance Company, verify under penalty of perjury that the foregoing statements in Allstate Insurance Company's Verified Amended Complaint are true and correct to the best of my knowledge, information and belief.


Dated:  November 19, 2020

_Paul Sylvester_
_____
Paul Sylvester

66629316v.2